IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JULIE A. SU, Acting Secretary of Labor,
United States Department of Labor,

                Plaintiff,

v.

LOCAL 1408, INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION,

                Defendant.
_____/

Case No. 3:23-cv-_____

## COMPLAINT

Plaintiff Julie A. Su, Acting Secretary of Labor, alleges as follows:

### NATURE OF THE ACTION

1. This action is brought under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA or the Act), 29 U.S.C. §§ 481–483, for a judgment declaring that the December 12, 2022 election of union officers conducted by Local 1408, International Longshoremen's Association (Defendant or Local 1408), for the offices of President, Vice President, and Executive Board is void, and directing Defendant to conduct a new election for these offices under Plaintiff's supervision, and for other appropriate relief.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 482(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1345.

3. Venue lies in this district pursuant to 29 U.S.C. § 482(b) and 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff Julie A. Su is the duly appointed Acting Secretary of Labor, United States Department of Labor. Plaintiff is authorized to bring this action under section 402(b) of Title IV of the Act, 29 U.S.C. § 482(b).

5. Defendant is, and has been at all times relevant to this action, an unincorporated association maintaining its principal office in Jacksonville, Florida, within the jurisdiction of this District.

## FACTUAL ALLEGATIONS

6. Defendant is, and has been and at all times relevant to this action, a local labor organization engaged in an industry affecting commerce within the meaning of section 3(i) and (j) and 401(b) of the Act, 29 U.S.C. §§ 402(i) and (j) and 481(b).

7. At the time of the election, Defendant had approximately 1,600 members.

8. The members are maintenance workers and deep-sea longshoremen in Jacksonville, Florida.

9. The members work for approximately seven different employers.

10. Defendant elects its officers every 3 years, which include the positions of President, Vice-President, Business Agent–Assistant Treasurer, Financial Secretary-Treasurer, Recording Secretary, and five Executive Board members.

11. Article XI, Section 8 of the Local 1408's Constitution and Bylaws (Bylaws) states: "An Election committee shall be established to investigate all candidates for office to assure their eligibility under these by-laws, the ILA Constitution and federal law."

12. Local 1408 conducted an election of officers in 2022, and this election was subject to the provisions of Title IV of the Act, 29 U.S.C. §§ 481-483.

13. Local 1408's then-President, George Spencer, appointed an election committee to oversee the 2022 election of officers.

14. On November 7, 2022, Local 1408 held a nominations meeting.

15. After the nominations meeting, the election committee verified the eligibility of the nominees to run for office and made a number of disqualifications.

### A. Keith Hopkins and Micah Johnson's Disqualifications Pursuant to Section 504

16. Article XII, Section 1 of Local 1408's Bylaws state that "[n]o member will be eligible to seek or hold any office in this union who has been convicted of a crime prohibited by section 504(a) of the Landrum Griffin Act [better known as 504(a) of the LMRDA]."

17. Section 504 of the LMRDA prohibits anyone convicted of certain crimes –including "assault which inflicts grievous bodily injury" and a "violation of narcotics laws" – from service with a labor organization for thirteen years following the date of the individual's conviction or release from imprisonment, whichever is later. 29 U.S.C. § 504.

18. On or around November 17, 2022, Local 1408 performed background checks on the nominees to determine if they had been convicted of any disqualifying offenses under section 504 of the LMRDA.

19. The background check revealed that one of the nominees for Vice President, Keith Hopkins, had entered into a plea agreement related to a charge of battery domestic in violation of Florida Statute § 784.03(1)(a).

20. The election committee determined that Keith Hopkins' plea agreement fell within the section 504 bar for those convicted of "assault which inflicts grievous bodily injury" and so found him ineligible to run for office.

21. The background check revealed that one of the nominees for Vice President and Executive Board, Micah Johnson, had entered into a plea agreement related to a charge of possession of drug paraphernalia in violation of Florida Statute § 893.147.

22. The election committee determined that Micah Johnson's plea agreement fell within the section 504 bar for those convicted of a "violation of narcotics laws" and so found him ineligible to run for office.

### B. Tercel McKenzie's Disqualification as a De Facto Supervisor

23. Article XIII, Section 4 of The Constitution and Rules of Order of the International Longshoremen's Association, AFL-CIO (ILA Constitution) states: "No member who is an officer, director, partner, or principal in, or is employed in a supervisory job by, a business organization with which the I.L.A., or any of its

4

subdivisions, bargains or seeks to bargain collectively, can at the same time hold any office or be a candidate for any office in a local union of the I.L.A."

24. Local 1408 interprets this requirement to mean that, in order to be eligible to run for office, a member must either not be a supervisor or must submit a letter resigning their supervisory position to any member of the election committee prior to the actual nomination date and time.

25. Local 1408 is involved in assigning work to its members and dispatches members to jobs each working day.

26. Regular non-supervisory members are generally not attached to a particular employer and can be dispatched to work for any employer.

27. Longshoremen supervisory positions include "headers," which are a kind of dock foremen.

28. A member who formally holds the title of header generally is assigned to a particular employer to be a supervisor for that employer.

29. If there is a shortage of supervisors available to work on a particular day, Local 1408 assigns a regular worker to "substitute" as a header.

30. Local 1408 interprets the prohibition about supervisors in Article XIII, Section 4 of the ILA Constitution as prohibiting members who too frequently substitute as headers (called "de facto" supervisors) from running for office.

31. A finding of de facto supervisory status is made by Local 1408 on a case-by-case basis after examining the frequency with which the member substituted as a header.

32. Local 1408's members have not received guidance about how frequently one must substitute as a header in order to be considered a de facto supervisor.

33. The election committee was alerted to the fact that Tercel McKenzie, a nominee for the office of Vice President, had frequently substituted as a header from January 2022 to the date of the nominations meeting on November 7, 2022.

34. From January 2022 to November 7, 2022, McKenzie did not formally hold the title of header.

35. From January 2022 to November 7, 2022, McKenzie was not assigned to a particular employer to work as a header.

36. From January 2022 to November 7, 2022, McKenzie substituted as a header approximately 70 times.

37. McKenzie was unaware that his substituting as a header could make him a de facto supervisor for election eligibility purposes.

38. Prior to the nominations meeting, McKenzie did not submit a letter resigning a supervisory position to any member of the election committee or any employer.

39. After the nominations meeting, the election committee determined that McKenzie's frequent substitutions as a header made him a de facto supervisor.

40. After the election committee determined McKenzie was a de facto supervisor, it did not offer him an opportunity to resign or otherwise stop substituting as a header so that he could be eligible to run for office.

41. The election committee determined that McKenzie was ineligible to run for office because he had not submitted a resignation letter to an election committee member prior to his nomination.

### C. Vincent Cameron's Disqualification for a 2015 Delinquent Royalty Fee

42. Article XII, Section 2 of Local 1408's Bylaws states that "no member shall be eligible to seek or hold office in the local or as delegate of said local unless he/she has been: [] A member in good standing of the local for at least two years preceding the date of his nomination" [hereinafter referred to as the continuous good standing requirement].

43. Article XVI of Local 1408's Bylaws state several different types of payments that members must pay to the Local.

44. Article XVI, Section 2 of Local 1408's Bylaws state: "The dues for this Local shall be five dollars ($5) per quarter or $20.00 per year or such amount as the membership may from time-to-time determine and with authorization can be paid by check-off."

45. Article XVI, Section 5 of Local 1408's Bylaws state: "Any member who derives employment <u>via</u> the Local's hiring hall shall incur a charge to the Local, for the services so provided, of 5 percent of his gross earnings inclusive of royalty, vacation and holiday payments" [hereinafter referred to as the royalty fee requirement].

46. Article XVI, Section 4 of Local 1408's Bylaws state: "Any member who is thirty (30) days or more in arrears in the payment of dues shall be automatically suspended from all rights and privileges of membership. Any member who is eighty (80) days or more in arrears in the payment of dues shall be given written notice that failure to pay within ten (10) days shall mean automatic expulsion[;] and upon his failure to pay within such ten (10) days, he shall be automatically expelled and dropped from membership in the Local. A Notice of such expulsion shall be sent to their last known address."

47. Local 1408 interprets the royalty fee requirement as one of the financial obligations that a candidate for office must have timely paid to meet the continuous good standing requirement.

48. As part of the process for determining if nominees met the continuous good standing requirement, the election committee contacted Local 1408's Pension and Welfare office relating to records about nominees' royalty fee payments.

49. The election committee's review indicated that Vincent Cameron (a nominee for President) owed a royalty fee payment from March 2015.

50. The election committee requested that Cameron provide proof of payment of the 2015 royalty fee.

51. Cameron believed he paid the royalty fee requirement via money order in 2015, but he did not have evidence of the payment due in part to the time elapsed.

52. When Cameron did not provide proof of his timely payment in 2015 of the royalty fee requirement, the election committee disqualified Cameron for failing to meet the continuous good standing requirement.

53. In the years between 2015 and November 2022, Local 1408 did not provide Cameron with a delinquency notice or inform him he was not in good standing because of his failure to pay the 2015 royalty fee requirement.

54. In the years between 2015 and November 2022, Local 1408 did not suspend or expel Cameron for failing to pay the 2015 royalty fee requirement.

55. Cameron was found eligible to run for the office of President in Local 1408's 2017 election of officers.

56. Cameron was found eligible to run for the office of President in Local 1408's 2019 election of officers.

### D. Internal Union Exhaustion and Administrative Proceedings

57. On December 14, 2022, Hopkins protested the determination that he was ineligible to run for office in a letter sent to Local 1408's Financial Secretary-Treasurer.

58. On December 20, 2022, Kenneth Thomas (a nominee for President) protested his disqualification pursuant to Local 1408's continuous good standing requirement in a letter to Local 1408's Financial Secretary-Treasurer.

59. On December 27, 2022, Local 1408's Executive Board held hearings concerning Hopkins' and Thomas' protests, but the Executive Board decided not to

rule on the protest and instead defer to the South Atlantic and Gulf Coast District (SAGCD).

60. In a December 27, 2022 email, Hopkins appealed the Executive Board's decision to the SAGCD.

61. In its Report and Recommendation dated March 20, 2023, the SAGCD decided that Hopkins, Cameron, and Thomas had been improperly disqualified and directed that Local 1408 conduct a new election for the offices of President and Vice President.

62. In a letter dated March 30, 2023, Carl M. King Sr. (the election committee chair) appealed the SAGCD's decision to the International Executive Council (IEC).

63. In a letter dated March 31, 2023, Warren K. Smith (Local 1408's President) appealed the SAGCD's decision to the IEC.

64. In a letter dated April 2, 2023, Fred Wakefield (Local 1408's Vice President) appealed the SAGCD's decision to the IEC.

65. After having pursued internal remedies for three months without receiving a final decision, Hopkins submitted a complaint to the U.S Department of Labor on April 7, 2023, pursuant to section 402(a)(2) of the LMRDA, 29 U.S.C. § 482(a)(2).

66. After having pursued internal remedies for three months without receiving a final decision, Thomas submitted a complaint to the U.S. Department of

Labor on April 19, 2023 pursuant to section 402(a)(2) of the LMRDA, 29 U.S.C. § 482(a)(2).

67. Pursuant to section 601 of the Act, 29 U.S.C. § 521, and in accordance with section 402(b) of the Act, 29 U.S.C. § 482(b), Plaintiff investigated the complaints and, as a result of the facts shown by her investigation, found probable cause that violations of Title IV of the Act, 29 U.S.C. §§ 481–483, occurred that have not been remedied and that may have affected the outcome of Defendant's December 12, 2022 election.

68. By letter signed April 28, 2023, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's aforesaid election be extended to June 19, 2023.

69. By letter signed May 31, 2023, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's aforesaid election be further extended to July 17, 2023.

## FIRST CAUSE OF ACTION

70. Section 401(e) of the Act, 29 U.S.C. § 481(e), requires that "every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed)." 29 U.S.C. § 481(e).

71. Neither Hopkins nor Johnson was convicted of an offense that was functionally equivalent to one of the disqualifying offenses listed in section 504 of the LMRDA.

72. Defendant violated section 401(e) when it improperly disqualified Hopkins and Johnson pursuant to section 504 of the LMRDA.

## SECOND CAUSE OF ACTION

73. "An essential element of reasonableness [of a qualification to run for office] is adequate advance notice to the membership of the precise terms of the requirement." 29 C.F.R. § 452.53.

74. Defendant did not provide adequate advance notice to members of its rule that members who frequently substituted as headers are considered de facto supervisors.

75. McKenzie did not have adequate notice that he would be considered a de facto supervisor and that, in order to be eligible to run for office, he needed to submit a letter of resignation of his de facto supervisory position to the election committee prior to his nomination.

76. As a result of the lack of adequate advance notice, Defendant applied an unreasonable candidate qualification and violated McKenzie's right to run for and hold office "subject to reasonable qualifications uniformly imposed." 29 U.S.C. § 481(e).

## THIRD CAUSE OF ACTION

77. Candidate qualifications that seem reasonable on their face may nevertheless not be proper if applied in an unreasonable manner. 29 C.F.R. § 425.53.

78.   Defendant's continuous good standing requirement was unreasonable in the manner it was applied to disqualify Cameron for an alleged royalty fee delinquency from 2015.

79.   Cameron was denied a reasonable opportunity to bring himself into compliance with the continuous good standing requirement in advance of the 2022 election given that Local 1408, in the years subsequent to the alleged 2015 missed royalty fee requirement payment, did not send Cameron notice of the delinquency, did not pursue the consequences contemplated in its Bylaws for failure to pay dues, and repeatedly found Cameron eligible to run for office.

80.   The union therefore violated Cameron's right to run and hold office by unreasonably applying a facially reasonable qualification requirement in violation of 29 U.S.C. § 481(e).

81.   The above violations of section 401(e) of the LMRDA, 29 U.S.C. § 481(e), may have affected the outcome of the election for the offices of President, Vice President, and Executive Board.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment:

(a)   declaring Defendant's election for the offices of President, Vice President, and Executive Board to be void;

(b)   directing Defendant to conduct a new election, including new nominations, for these offices under the supervision of Plaintiff; and

(c) for the costs of this action; and

(d) for such other relief as may be appropriate.

Dated: July 17, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General, Civil Division

ROGER B. HANDBERG
United States Attorney

*/s/ Ronnie S. Carter*
RONNIE S. CARTER
Assistant United States Attorney
Florida Bar No. 0948667
Lead Counsel
United States Courthouse
300 North Hogan Street, Suite 700
Jacksonville, Florida 32202-4270
Telephone No. (904) 301-6324/6300
Facsimile No. (904) 301-6240/6310
Email: Ronnie.Carter@usdoj.gov
*Counsel for Acting Secretary of Labor*

OF COUNSEL:

U.S. Department of Labor
SEEMA NANDA
Solicitor of Labor
BEVERLY DANKOWITZ
Associate Solicitor
JEFFREY LUPARDO
Counsel for Labor-Management and
Civil Rights Enforcement
CLAIRE KENNY
Senior Attorney