**Exhibit 1**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LORI CHAVEZ-DEREMER,[1]
Secretary of Labor, United States
Department of Labor,

      Plaintiff,

                                   Case No. 3:23-cv-00835-TJC-LLL

v.

INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION
AFL-CIO LOCAL 1408, INC.,

      Defendant.

_____/

**CERTIFICATION OF ELECTION BY U.S. DEPARTMENT OF LABOR**

The election having been conducted in the above matter under the supervision of the Secretary of Labor, U.S. Department of Labor, pursuant to a Stipulated Settlement and Order dated November 6, 2024, in the United States District Court for the Middle District of Florida, Jacksonville Division, in accordance with the provisions of Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. §§ 481-483) and, insofar as lawful and practicable, in conformity with the Constitution and Bylaws of the defendant labor organization, therefore: Pursuant to Section 402(c) of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 482(c)), and the authority delegated to me,

---

[1] Pursuant to F.R.C.P. 25(d), Lori Chavez DeRemer, who is serving as the Secretary of Labor, is automatically substituted as the Plaintiff in place of former Secretary of Labor Julie A. Su.

**IT IS HEREBY CERTIFIED** that the following named candidates are duly elected to the offices designated:

| | |
|---|---|
| Warren K. Smith | President |
| Fred D. Wakefield | Vice President |
| Jann Clark | Financial Secretary and Recording Secretary |
| Nate Gardner | Business Agent/Assistant Treasurer |
| Bilal Jackson | Executive Board |
| Isaiah Young | Executive Board |
| Jeffrey Harris | Executive Board |
| Shurmarr Bailey | Executive Board |
| Williams Watson | Executive Board |

Attached herewith is a declaration setting forth the allegations in the protests concerning the supervised election and the Department of Labor's findings after investigating the protests.

Signed this 5th day of March, 2026.

*molly wagoner*

_____
Molly Wagoner
Chief, Division of Enforcement
Office of Labor-Management Standards
United States Department of Labor

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LORI CHAVEZ-DEREMER,
Secretary of Labor, United States
Department of Labor,

      Plaintiff,

                                         Case No. 3:23-cv-00835-TJC-LLL

v.

INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION
AFL-CIO LOCAL 1408, INC.,

      Defendant.
_____/

**DECLARATION OF MOLLY WAGONER**

I, Molly Wagoner, am the Chief of the Division of Enforcement, Office of

Labor-Management Standards ("OLMS"), United States Department of Labor

("Department"). The Secretary of Labor enforces provisions of the Labor-

Management Reporting and Disclosure Act (LMRDA) and has delegated that

authority to OLMS. OLMS supervised an election of officers of the International

Longshoremen's Association AFL-CIO Local 1408, Inc. ("Local 1408"), which was

held on December 8, 2025, pursuant to the Stipulated Settlement and Order entered

November 6, 2024, by the Court ("the supervised election").

OLMS received one pre-election protest and two post-election protests, which

it investigated and resolved prior to certifying the supervised election, as described

below. The supervised election included new elections for the LMRDA-covered

positions of President, Vice-President, Business Agent/Assistant Treasurer, Financial Secretary, Recording Secretary, and Executive Board (5 positions).

### A.        Election Process

On October 1, 2025, written combined nomination and election notices were mailed to the membership. The notices contained information about the planned October 30 nominations meeting, December 8 polling site election, absentee ballot procedures, and the requirements that members must meet to nominate candidates, be a candidate, and vote in the election. Notices were also posted at employer work sites and on the union's bulletin boards.

On October 30, 2025, Local 1408 conducted the nominations meeting in its union hall. All nominees passed a background check to ensure they were not barred from holding union office in accordance with 29 U.S.C. § 504. The nominees were also vetted to ensure they met the eligibility requirements in Article XII of Local 1408's Bylaws and Article XIII, Section 3 of the ILA Constitution, including maintaining good standing for at least two years preceding the date of nominations and working at least 700 hours at the trade (or employed by the union) each year. Six nominees were determined to be ineligible for failing to meet the good standing or working in the trade requirements.

The morning after nominations, a candidates meeting was held at the union hall. Candidates were informed of the election rules and procedures relating to campaigning, inspecting the mailing list, distributing campaign literature, and observing the election processes.

On November 13, 2025, the ballots were printed by the Duval County Supervisor of Elections printing shop. The ballots were printed on paper designed to be used in Duval County tabulator machines and contained security measures. The printing, acquisition, custody, control, and distribution of ballots was under the direct supervision of OLMS Election Supervisor Justin Papineau.

On December 5, 2025, the Election Supervisor and another OLMS employee supervised the delivery of tabulator machines and voting booths by the Duval County Supervisor of Elections Office. The machines were tested for accuracy and then stored safely to prevent tampering.

The election took place at the union hall between 7:00 a.m. and 7:00 p.m. on December 8, 2025. The union provided four volunteers to serve as poll workers, checking voters' eligibility at the entrance of the polling site. One of the poll workers checked each voter's identification and marked off the voter's name on the eligibility list. The voter was then handed a blank ballot by an OLMS employee and ushered to an open voting booth to mark their ballot in private. The voter then walked to an electronic voting machine to cast their ballot. When a voter was not on the eligibility list, Local 1408's Financial Secretary was consulted to determine the reason for their exclusion. The process allowed the voter and Local 1408 to address or correct any issues and the voter to cast a provisional ballot if necessary.

Around 4:00 p.m., the Election Supervisor and an election committee member went to the post office to retrieve any absentee ballots that had been timely voted and returned. Six members had requested and were mailed absentee ballots during the

3

election. Only one ballot was voted and mailed back. The Election Supervisor maintained possession of the ballot until, in the presence of observers, the voter's eligibility was confirmed and the ballot was fed into the voting machine (downward facing to preserve secrecy).

The ballot tally occurred immediately following the close of the polls. The voting machine tabulated the 669 ballots cast and printed a long tape with results for every race. The complete results are as follows:

| Office | Candidate | Total Votes |
|---|---|---|
| President | **Warren K. Smith** | **373** |
| | Kenneth Thomas, Sr. | 207 |
| | Isiah J. Williams, IV | 69 |
| Vice President | Keith Hopkins | 173 |
| | Lorenzo Spencer | 207 |
| | **Fred D. Wakefield** | **280** |
| Financial Secretary | **Jann Clark** | **399** |
| | Mincy Pollock | 140 |
| | Anthony Roundtree | 120 |
| Business Agent/Assistant Treasurer | **Nate Gardner** | **299** |
| | Williams Watson | 72 |
| | Craig Craine | 245 |
| | Anthony Ross | 35 |
| Recording Secretary | **Jann Clark** | **515** |
| | Adrienne Hills | 114 |
| Executive Board (5) | Romia Johnson | 175 |
| | **Jeffrey Harris** | **276** |
| | **Bilal Jackson** | **349** |
| | Anthony Roundtree | 200 |
| | Cornelius Peterson | 56 |
| | **Williams Watson** | **235** |

4

| | | |
|---|---|---|
| | **Shurmarr Bailey** | **255** |
| | Jervard Priester | 166 |
| | Arqueous Lowry, Sr. | 213 |
| | Mary Branton | 90 |
| | Timothy Gardner, Sr. | 97 |
| | Robert Hammond | 84 |
| | Darryl Alston | 233 |
| | Adrienne Hills | 54 |
| | **Isaiah Young** | **297** |
| Audit Committee (3)[1] | Cornelius J. Peterson | 136 |
| | **Jervard Priester** | **261** |
| | **Anthony Roundtree** | **369** |
| | **Vincent S. Cameron** | **252** |
| | Mary Branton | 114 |
| | Romia Johnson | 247 |
| | Timothy Gardner, Sr. | 239 |

The results were announced to the membership gathered around the union hall and then printed and posted on the union's doors. The newly elected officers began their terms of office in January 2026, in accordance with Local 1408's Bylaws and Paragraph 6 of the Stipulated Settlement and Order.

**B. Election Protests**

The election rules allowed members to submit protests directly to the Election Supervisor in writing at any time before or during the election, or within 10 days after the December 8, 2025 ballot tally. The deadline for accepting protests was December 18, 2025. OLMS received and investigated one pre-election protest and

---

[1] The Audit Committee position is not an officer position within the meaning of the LMRDA. *See* 29 U.S.C. § 402(n) (defining officer as "any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body"). While the Department oversaw all of the races above, the Audit Committee results are not included in the certification since it is a non-LMRDA covered position.

5

two post-election protests.

**Pre-Election Protest:** On November 13, 2025, the Election Supervisor received a protest from Jann Clark, then the incumbent Financial Secretary and later the winning candidate for that position as well as the position of Recording Secretary. Clark's allegations concerned the eligibility of Mincy Pollock, a candidate for Financial Secretary. Clark alleged that Pollock was late paying his 2024 membership dues because he did not pay a delinquent balance of $40 until January 31, 2025. Clark also alleged that Pollock was late paying his 2025 dues because he paid them on January 31, 2025, and payment was due by January 30, 2025.

**Response:** Section 401(e) of the LMRDA requires that a union conduct its election in accordance with the provisions of its constitution and bylaws insofar as they are not inconsistent with the LMRDA. 29 U.S.C. § 481(e). The Department accepts the interpretation consistently placed on a union's constitution by the responsible official or governing body unless it is clearly unreasonable. 29 C.F.R. § 452.3.

Section 401(e) of the LMRDA also provides that every member in good standing shall be eligible to be a candidate for office, subject to "reasonable qualifications uniformly imposed." 29 U.S.C. § 481(e). "An essential element of reasonableness [of the candidacy qualification] is adequate advance notice to the membership of the precise terms of the requirement." 29 C.F.R. § 452.37(b). While a continuous good standing requirement is considered to be a reasonable qualification

6

for office, *see* 29 C.F.R. § 452.37(b), it may nevertheless be an improper qualification if applied without proper notice or in an unreasonable manner.

OLMS investigated Local 1408's rules and past practices regarding eligibility and payment of dues. Article XII, Section 2 of Local 1408's Bylaws stated that candidates must have been "in good standing of the local for at least two years preceding the date of [their] nomination." Article XIV, Section 1 of the International Longshoremen's Association (ILA) Constitution provided that, in order to be considered in good standing, a member must have "paid all financial obligations owed" to the local and International union, including dues and fees. In 2023, Article XVI of Local 1408's Bylaws provided for payment of $5 in dues quarterly or $20 annually, and members are encouraged to pay them in full in advance.

Article XVI, Section 4 of Local 1408's Bylaws provided for suspension of members who are 30 days or more in arrears in the payment of dues. In Clark's view, this meant that the last day to pay the dues for the first quarter was January 30 and that a member would fall out of good standing if they paid on or after January 31. Local 1408's President Warren Smith stated, however, that since January 1 is a "no work day," the dues are due on January 2, and that it is January 31 that is the last day to pay dues and remain in good standing. Annual dues were considered late when paid on February 1. Smith stated that while this is not reflected in the constitution or bylaws, it was set out in a meeting at some point and has been Local 1408's practice.

During ILA's July 2023 convention, the ILA's constitution was amended to increase local unions' dues to $80 per year, which would be effective beginning 2024.

7

Local 1408 did not mail out a notice about the change in dues until sometime in November 2024. The notice explained that the "increase in dues is effective beginning January 1, 2024 and that all active members are now required to pay the increased dues to remain in good standing." The notice ended with a statement that: "beginning January 1, 2025 ILA 1408 Financial Secretary will STRICTLY enforce Article XVI of the ILA 1408 Constitution and Bylaws."

In February 2023, Pollock paid $60 to cover his dues for 2023, 2024, and 2025. After the 2024 dues increase, Clark prorated the $40 that Pollock had intended to cover his 2024 and 2025 dues toward the increased 2024 dues, covering just the first two quarters of 2024. Pollock did not receive individual notice of this proration or that he owed additional amounts in light of the dues increase. Pollock was unaware that he owed delinquent dues for 2024 until January 31, 2025, when he paid his 2025 membership dues and the balance of his 2024 dues.

OLMS' investigation concluded that, under the circumstances, the LMRDA was not violated by allowing Pollock to be a candidate for office. According to the President's interpretation of Local 1408's Bylaws, which was not unreasonable, Pollock's payment of his 2025 dues on January 31 was timely. With respect to the 2024 dues, Local 1408 did not provide Pollock with individualized notice that would have informed him that his prepayment of yearly dues was no longer sufficient. Moreover, a generalized notice regarding the dues change was not sent to the membership prior to the effective date. This lack of notice to Pollock that he would have a delinquency because of the dues increase undercuts the reasonableness of

8

strictly applying the continuous good standing requirement to Pollock in this respect. As such, the determination that Pollock was eligible to be a candidate was consistent with the LMRDA.

**First Post-Election Protest:** On December 11, 2025, Kenneth Thomas, Sr., a candidate for President, emailed a protest to the Election Supervisor concerning the eligibility of candidate and Local 1408 President Warren Smith. Thomas alleged that Smith was not in good standing because he made two fraudulent charges to the union credit card at the Cataluna Lounge on June 19, 2024, and did not make restitution until October 2024. Thomas alleged that this should be considered a financial delinquency that was paid beyond Local 1408's 30-day requirement for satisfying financial obligations.

**Response:** The investigation corroborated that Smith used his authorized union credit card at the Cataluna Lounge on June 19, 2024, to cover two transactions. Two Executive Board members noticed the credit card charges and asked Smith about it. After Smith received the credit card statement, Smith realized he had accidentally used the union's credit card instead of his personal one. He contacted the Cataluna Lounge and had the charges to the union credit card reversed. The credit card statement shows the transactions were reversed on August 28, 2024. Records and interviews did not reveal that the Executive Board convened a meeting to confront Smith about the charges or order repayment. There was no documentation or meeting minutes that showed the Executive Board ever ordered repayment, issued an assessment, or otherwise imposed a finding of a debt of the

9

charges or a date by which repayment was required in order for Smith to retain good standing. The investigation confirmed that Smith had timely paid his dues for the two years preceding his nomination. As such, the investigation concluded that, during the two years preceding his nomination, there were no delinquent financial obligations that placed Smith in bad standing. The determination that Smith was eligible to be a candidate was consistent with the LMRDA.

**Second Post-Election Protest:** On December 12, 2025, Mincy Pollock, a candidate for Financial Secretary, emailed a protest to the Election Supervisor concerning the eligibility of Jann Clark, then the incumbent Financial Secretary and later the winning candidate for that position as well as the position of Recording Secretary. Pollock alleged that Clark was subject to a formal disciplinary suspension in 2025, which may have affected her good standing status and rendered her ineligible to run for office.

**Response:** As noted above, Section 401(e) of the LMRDA requires that a union conduct its election in accordance with the provisions of its constitution and bylaws insofar as they are not inconsistent with the LMRDA. 29 U.S.C. § 481(e). Article XII, Section 2 of Local 1408's Bylaws states that candidates must have been "in good standing of the local for at least two years preceding the date of [their] nomination." The ILA Constitution, Article 14, Section 1 defines a member in good standing as someone who has "fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership in accordance with the provisions of

10

this Constitution and the applicable local by-laws." The ILA Constitution and Local 1408's Bylaws do not explain whether suspensions from office impact good standing status. In response an inquiry from OLMS on this matter, the ILA President declined to issue an interpretation.

The investigation confirmed that, after a grievance hearing on July 16, 2025, Clark was suspended by the Local 1408 Executive Board for seven days without pay for dereliction of duty. The letter did not indicate that Clark was suspended from membership. Local 1408 President Warren Smith explained that Clark's suspension was from her officer duties. Smith stated that the ILA advised him that this disciplinary suspension would not disqualify Clark from running for office. The investigation therefore did not reveal any evidence that the suspension affected Clark's membership or good standing status. The determination that Clark was eligible to be a candidate was consistent with the LMRDA.

## C. Conclusion

The Department has concluded from its investigation of these election protests that Local 1408's December 8, 2025 election of officers, conducted under the Department's supervision, complied with Title IV of the LMRDA and was conducted, insofar as lawful and practicable, in accordance with Local 1408's constitution and bylaws. Therefore, the results of this supervised election should be certified by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

11

Executed on this 5th day of March, 2026 in the City of Washington, District of

Columbia.


_____
Molly Wagoner
Chief, Division of Enforcement
Office of Labor-Management Standards
United States Department of Labor